162275 Granville D. Laws v. CSA Architects and Engineers, LLP. Good morning, Mr. Esquivel. Good morning. Good morning, Your Honors. May it please the Court. My name is Jorge Izquierdo, and I am the attorney for the appellant, Mr. Granville Laws. At this time, I would request the Court to allocate three minutes of my time for rebuttal purposes. You may. Thank you, Your Honor. As you know, Mr. Laws was the plaintiff at the district court level. We're asking this Honorable Court to reverse the district court's judgment, dismissing this case as a matter of law under Rule 50. To order the district court to hold a second trial, a new trial. And to order the district court to allow the plaintiff's liability expert, Engineer Attenborough, to provide just one opinion at this moment, one opinion which would be his opinion against defendant CSA, given the fact that CSA is the remaining party in this appeal as we settle the case with the rest of the defendants. It was, by the way, the exclusion of Engineer Attenborough that led the Court to dismiss the case under Rule 50. Will you agree that for us to reverse the district court or exclusion of your expert, we would have to find abuse of discretion? Yes, that is the standard, as I say in my brief. That is the standard. Right. Can you tell us how there is an abuse of discretion? Yes. Yes. The abuse of discretion. Let me go. If you want me, I can go first to Rule 26. Go ahead. Okay, good. The Court excluded Mr. Attenborough under Rule 26, right, based on four material facts, all of which are completely incorrect. That is an abuse of discretion. This is what the Court found. The Court found that Attenborough's opinion against CSA was given for the first time at the Daubert hearing. That hearing, 12-day Daubert hearing, as you know, was held after the plaintiff finished the presentation of all of his witnesses. So the Court found that that was the time that he gave the first, his opinion against CSA. The Court also found that, accordingly, CSA was unaware of that opinion and that, therefore, they had no time to defend themselves from that opinion and that, in fact, they did not. Counsel, when did Mr. Attenborough first articulate the theory that CSA was remiss, negligent, in not checking with the city to see if their plans for the bus stop had changed, the presence of that bus stop apparently having been important to CSA in the design that they did? When did he first articulate that theory? I thought it was at the Daubert hearing that he first articulated that theory. Is that incorrect? Yes, that is incorrect. The first time that Mr. Attenborough gave that opinion was 20 months before the trial at his second deposition. Now, that deposition, second deposition was held after I asked the Court permission to join then third-party defendant as a defendant. At that moment, they opposed and said they were in the dark as to any opinions against them by Attenborough. So they requested a second deposition. They asked Attenborough, what is your opinion against CSA? He provided that opinion at that second deposition, and more importantly, more importantly, after the deposition, I filed a motion telling the Court we want them to be joined, and this is the opinion, Your Honor. The opinion of Attenborough is this, this, and that, and I am attaching here the exact deposition pages where Attenborough provided his opinions. In other words, what we did not do is what the rule does not want us to do, which is to take a 500-deposition page, grab a one-liner, and suddenly come up with a new theory in the middle of the trial. It's not what we did. We attached the exact deposition pages. Now, let me say, two days, two days before the Daubert hearing. Before you get to the Daubert hearing, just to hone in a little bit, because I know there was a second deposition after you joined them as defendants, was his opinion at the second deposition consistent with his theory of liability at trial? That's what we're trying to figure out. Yes. Was it entirely consistent? Oh, yes. It was entirely consistent. Now, let me just say, let me just say that two days before the Daubert hearing, my colleagues filed a motion explaining Attenborough's opinion, but attacking the opinion on different grounds. Not on Rule 26 grounds, on different grounds, and that is, Your Honors, at Docket 663. It is not in my appendix. Mr. My colleague from CSA said the following in that motion. When asked if he had changed his opinion in any way, Attenborough testified that he now opined that the decider was also at fault upon realizing that the existing bus stop was not going to be relocated at thought. Then the decider should have taken steps to close the sidewalk at the intersection rather than when it was closed at mid-block. They put it two days before the trial in a motion, in a motion. They knew about the opinion. Now, let me, and by the way, so they had 18 months since the day that I attached those deposition pages, the exact ones, 18 months to defend that opinion. And in fact, they did, because they retained an expert, Mr. Yates, who defended the design, right? And in his deposition, I asked him, what do you think about Attenborough's opinion on the bus stop and closing at the intersection? No, that doesn't matter. I would have done that. It was not necessary. That's what their experts said. So the court ignored, never mentioned what their expert did. And that is also an abuse of discretion. Your Honors, let me just go now to the Dauber aspect of the case and Rule 403. The court basically said the following. Attenborough flip-flopped, so therefore he's unreliable. Attenborough did not present it at the Dauber hearing how his opinion fit the accident. And Attenborough, even if they had closed at the level of the intersection, the accident, we don't know if the accident would not have occurred. That's basically what the district court is saying as to Dauber. Now, let me just say the following. Well, counsel, I thought what troubled the district court, the essential breach that the expert cited was I think the expert was saying that CSA had a duty to consult the city to see if the plans for the bus stop had changed. When asked what is the source of that duty, Mr. Ahrenberg says common sense. That's all he invokes is common sense. That, reduced to its essence, that seems to be his theory of the case. And the court says that's – where's the science behind that?  Well, the basis is that the engineers, like he said, the engineer has to provide safety. That's the main concern. Now, let me just say about the engineering common sense. These are the facts. And I want to address your question right now. The facts are that Ms. Vargas acknowledged that closing the sidewalk at the level of the intersection would have been the appropriate way to force pedestrians to cross at the intersection. But unless she did not do it, because she had to put a bus stop there, right? The fact of the matter is that when the trial occurred, the construction was over, and there was never a bus stop. So we really don't know whether what Ms. Vargas said is true. In fact, today, if you go by there, there is no bus stop. Now, by the way, Attenberg did explain that before the accident, there were some requests for information that suggested that the bus stop was never going to be relocated. And that is – that was – that occurred during the Daubert hearing and during the depositions. The engineering common sense, look what it is. Attenberg says the following. If I'm a designer and somebody asks me to set up a bus stop there in the middle of the sidewalk, that's going to lead pedestrians to close that sidewalk even more. Because I think that's dangerous, what should I do? Let me call the bus authority to make sure that they want me to do it. Does that make common sense? Is the notion that if that walkway had been closed all the way to the intersection, which was some 250 feet away, if that entire pedestrian area had been closed, there would have been no reason for your client or anyone else to cross the road at that barrier. And the theory is if CSA had known that there wasn't going to be a bus stop, then it would have made sense to close that walkway all the way to the intersection and there would have been no reason for your client to cross. Is that basically the theory? Well, that is the theory, but it's not just a theory. It was what Ms. Vargas, the designer of CSA, said. Let me read you just two lines. Is there any design contemplated in the MUTCD that will force a pedestrian to cross the street at the traffic light? Yes. And how is that? Blocking the sidewalk at the level of the intersection. Question. If the bus was never going to be relocated in the area, what was the utility of the sidewalk? Nothing. If that information had been given to you, what would your recommendation as to modify your plan would have been? Vargas, the designer, said close the sidewalk at the intersection. Everybody agrees. Everybody agrees. I'm sorry. And Ms. Vargas, who designed it, agrees that if there was not going to be a bus, and there never was, she had to close the sidewalk at the level of the intersection. There's no controversy as to that. As to the fit, as to the fit, does it have any relation, the fact that the barrier was placed at mid-block? Does that have anything to do with the accident? The court says that there was no evidence presented at Daubert about the fit. Again, that is simply not correct. And I'm just going to read you a paragraph of what Aaron Burr said. The court asks, so then how does that affect this accident? The witness. It affects it because since the bus was not relocated to this portion of the sidewalk, this sidewalk should have been closed at the intersection rather than being left open. Had it been closed at the intersection, the mid-block would not have been in place, and it would not have enticed pedestrians to cross. But you know what? Aaron Burr is not the only one that says that. You know who else says it? The expert. The expert of QB. And let me just read you what he said very briefly. This is what he said. I'm sorry, but your time is up. Oh, okay. Good. Thank you. You have a rebuttal. Thank you. Okay. May I please have the court? Ricardo Casillas for CSA Architects and Engineers. This court should affirm because the district court correctly exercised its discretion both to exclude plaintiff's liability expert in a negligence design case for multiple Rule 26 violations, and then enter judgment for CSA under Rule 58 as a matter of law for insufficiency of the evidence. The standard is of use of discretion and has a two-part test. The first test is, did plaintiff commit any Rule 26 violations? The plaintiff did. The plaintiff committed three major Rule 26 violations in a three-year-old case during a month-long trial. The first violation was the preliminary and the only expert report did not contain a summary of any opinions on the basis of any opinions against CSA. The theory of the case from the start. There was a second deposition where he gave an opinion. Do you dispute that? I was getting to that point. The second point is, yes, there was a second deposition, and in that second deposition the plaintiff's expert came up with a new theory that was not in the original report. That is the bust-off opinion. And Rule 26E2 requires a party to supplement an opinion given in a deposition in a written report. So just voicing an opinion in a deposition does not comply with Rule 26E2. But we have cases that say that even though formally a supplemental report may not have been filed, if the defendant does understand the theory as it's evolved, there's no prejudice because the defendant has been advised of the theory that the plaintiff is going forward with. Rule 26E2 contemplates the requirement to supplement the testimony in a deposition. The district court did cite an Eighth Circuit case. The First Circuit has not spoken about this issue, where there was a new opinion given after a deposition. There would have been a mistrial had that new opinion been given, and the district court and the Court of Appeals in that case decided that the new opinion given by the expert at the deposition was not in a new report. But there's a transcript. There's a transcript of the deposition, and the second deposition was taken after your client was added as a defendant. But that's not the problem, Your Honor, is not that in the second deposition the expert gave an opinion as to the bust-off because at the Dobert hearing the expert gave two new opinions that were completely different from any other theories of liability in the case. The first opinion given at the Dobert hearing was that the design was sloppy. So why not preclude the new ones and allow the old one to be admitted? I mean, this is the punishment-has-to-fit-the-crime kind of situation. Well, Rule 37C1 does not require lesser sanctions. The question is whether the district court abused the discretion in imposing the sanction, and it did. And the testimony in the deposition would not have cured the Rule 26 violation because there was never any written report that could be used at trial to cross-examine an expert that was going to testify about a theory of a bust-off which- Well, I respectfully disagree, Your Honor. Why? Because this Court's precedence in the McCullough case is one where this Court, and Judge Vitesse was on that panel, affirmed an exclusionary order of an expert report that was produced on the eve of the pretrial. And the party in that case moved for a continuance, and the Court denied the continuance, and this Court affirmed finding- This deposition was 18 months before the trial. Well- It's not the eve of the trial, and your expert actually responded to the theories of liability that were propounded by the expert during the deposition. But the prejudice stems from an expert- What was the prejudice? The prejudice stems, Your Honor, from the record in this case of an expert that's changing the theory of liability from absolving CSA in testimony on the roof, including in the deposition. In the second deposition, the expert testified that CSA, the sign was correct, as he has testified in the first deposition, both testimonies on the roof. Now you have an expert mid-trial without any written report against CSA saying that the opinion is sloppy and that the sign should have been performed in another fashion, and that's not the only new opinion. So why does it go to the weight as opposed to the admissibility? It doesn't go to the weight or to the admissibility, because there is a Rule 26 violation. Did the court abuse its discretion in finding Rule 26 violations? The answer is no. Counsel, we've certainly had cases that say, I mean, once this report was excluded, the case was over. I mean, that was clear. So this, and we have said in those circumstances, the court has got to be very, very careful that there's got to be a justification for taking that exclusionary step, because, again, the case is over. That's a very big deal. And if there are lesser steps that can be taken, the court should consider them. And Judge Thompson has just suggested one. Those opinions that you said were completely new on the eve of trial, that they emerged at the Daubert hearing, perhaps the judge could exclude those but could return, could allow the plaintiff to put on the theory that was disclosed at that deposition that was taken 18 months before trial. Why would that be a much more sensible way to proceed? Because to proceed on cross-examination with a jury in a case of this sort, where the plaintiff suffered unquestionable damages and the defendant does not have an expert report, to cross-examine the witness, all that the defense had was the second deposition, where the testimony came about, about the moving of the ball stop and the admission of the expert, that that would not have mattered or the expert did not know whether that would have affected the behavior of the plaintiff in walking or jaywalking as he did, it would have been extremely prejudicial and totally insufficient to do an effective cross-examination based on a second deposition where the testimony was that the design was correct with the first deposition that the design was correct without having an expert report. And then at the Dobert hearing, the expert admitting that if he were allowed to testify that the design was sloppy, the prejudice would have been monumental. The purpose of Rule 26 is to prevent trial by ambush. And this is a case where there is clear misconduct of the plaintiff in violating Rule 26. If there's going to be any fair trial, the district court had a Hobson's choice here. Either go ahead with the trial and the defendant would be unable to do an effective cross-examination without having any expert report in a three-year-old case or let the evidence in. You had an expert deposition where you questioned the expert on the theory of liability. But the interrogation in the deposition itself was insufficient because the examiner did not have an expert report to even take that deposition. Normally, depositions of experts are the exception. You have an expert report, and if you're going to take the deposition of an expert, you need an expert report to cross-examine the expert and tie the expert to the testimony in the report. CSA took the second deposition, not only without having an expert report, but having prior testimony that the design was correct. So imagine if CSA had gone through trial in the middle of a cross-examination and the expert had testified to a number of things. The second deposition would have been useless because there was no prior report. There was nothing to tie his testimony under oath to a written report as an expert should. Any other result would circumvent Rule 26. Why don't you move on to the Daubert basis for exclusion? Well, as to the Daubert basis for exclusion, the problem there are a number of things. First of all, the analysis of the expert did not rely on treatises that the expert conceded should have been consulted. For example, the expert did not do an investigation of the accident, did not do a survey of the accident, relied on police reports which are notoriously unreliable. The expert also lacked the necessary foundation to reach a conclusion as to the proximate cause of the accident because he could not testify as a human behavior expert would in terms of the behavior of the plaintiff crossing from the north side of the road to the southern side of the road and tying that opinion to the design of the maintenance of traffic plan. So there were a number of problems with the expert in terms of the unreliability of the opinion of the expert. And Judge Lippes highlighted a very important one. His testimony is based on common sense. Well, the problem is that the bus stop, the barrier in the bus stop was designed according to the manual on uniformed traffic devices. That was admitted by Aaron Berg himself. That was the plan as it was designed. And the barrier was not a requirement under the manual to be placed at the intersection. Aaron Berg admitted that. So the point is that Aaron Berg cited the manual as the engineering Bible, but the expert did not follow the engineering Bible in his opinions. Counsel, isn't plaintiff's theory of the case supported by Mr. Aaron Berg pretty simple? And it is that if there had been no need to keep that sidewalk open all the way to the intersection, which is I guess about 250 feet away, that sidewalk would have been closed. And with that sidewalk closed, there would have been no reason for the plaintiff to cross the street at the barrier and expose himself to all that risk. And Vargas testified, I believe, that if she had known that there wasn't going to be a bus stop there and hence there was no need to keep that sidewalk open, it would have been closed. And then if the sidewalk had been closed, the accident never would have happened. Isn't that the theory of the case? That's a theory, but those are not the facts. Number one, Vargas did not know that the bus stop would be closed. So there is no foundation of the record. But the theory is that she should have known. Well, there is no duty of care for her, according to plaintiff's expert, for her to have called somebody at the bus authority to inquire whether or not the bus stop would have been relocated or was eliminated. It's not part of the duty of care of the designer at the time that the plan was implemented because the plan complied with the manual and the manual was approved by the highway authority and the barrier was placed where it did and it complied with the manual. So assuming she testified that if she had known that the bus stop would not be there, she would have placed the barrier at the intersection. That does not prove that it was more likely than not the plaintiff's behavior would have changed in any way, and Aramberg admitted to that. So the point is that it's not supported by the evidence that Vargas made any admission of any sort that would have changed the analysis of the district court in terms of the reliability of Aramberg's testimony or that it would have affected the issue of calcification. So finally, I'd like to address an important point, which is if plaintiffs had no expert testimony, expert testimony was required to prove a negligence in the signed case. Under Puerto Rico law, and Judge Lippes wrote the majority opinion in the Vasquez-Filippetti versus Banco Pular case, expert testimony is required. In the absence of expert testimony, there was insufficient evidence to prove a negligence in the signed case, and the district court correctly granted the Rule 50A motion. So the point is from all the alternative holdings of the district court in very thorough opinions following this court's precedent, this court should affirm on the Rule 26 violation and the subsequent holding of the prejudice to CSA from having to try a case without having the tools that are required by the federal rules of evidence before you do a cross-examination of an expert in an accident of this sort. Respectfully submitted. For this court, you're offering that as the better alternative rather than the Daubert basis for exclusion? Yes, I am.  Thank you, Your Honor. May I please speak? Okay. I'm going to address several points. I do want to say that, as I said before, Engineer Hanscom from QB agreed with Aronberg that there is a fit, and he says, as a human factor expert, can you tell me will the pedestrians have a tendency to use the same path to reach the destination over and over? He says they do have that tendency. That's at 8583. And I also ask him, do you agree with me that people would have a tendency to cross that mid-block where that first opening is from both sides of the road? Answer, of course there is a tendency. Now, I want to address my distinguished colleague's statement that he will be unable to effectively cross-examine Mr. Aronberg. First of all, like Judge Thompson said, there was a deposition and a lengthy one at that. Second, they have an expert. The expert defended the design thoroughly, and in the expert's deposition, Mr. Jates said, I don't agree with Aronberg's opinion. So to say that they were unable to cross-examine Aronberg, I don't think holds that much water. Finally, which is important, they claimed that they could not cross-examine Aronberg because he came up suddenly with a new opinion. It was like, what is he talking about? It has nothing to do with the original opinion. That is completely incorrect. Aronberg's technical opinions, and that's his expertise, have never changed. Never changed. The only thing that changed was CSA's explanation as to why they did some things, and then Aronberg modified his opinion as to CSA's fault. Let me tell you why Aronberg's opinion has been from day number one. He went to the site. He sees that there is a barrier occupying a significant part of the lane. He says that's dangerous for drivers. Close the lane and do a pedestrian cord. If you cannot do that, then you have to close at the level of the intersection. Now, when he was told by Vargas, I couldn't do it because supposedly somebody, because there was going to be a bus stop relocated there, then Aronberg said, if that's the case, then your design is fine. But only if it's that, because when you cross a mid-block, you needlessly increase the risk to pedestrians. When we found out that there was never a bus stop, Aronberg went back to his technical opinions, which has always been the same. You have to close the sidewalk at the level of the intersection to avoid mid-block crossings by pedestrians, which are inherently dangerous. Thank you. Is that it? Am I done? Yeah, you're done. Thank you. Thank you very much. Thank you.